# In the United States Court of Federal Claims

No. 24-287L
(Filed: April 9, 2025)
**FOR PUBLICATION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ROBERT F. BAUER, *et al.*, | \* |
| | \* |
| Plaintiffs, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Lindsay S.C. Brinton*, Lewis Rice LLC, St. Louis, MO, for Plaintiffs. With her on the briefs were *Meghan S. Largent*, *Michael Armstrong*, and *T. Hunter Brown*, Lewis Rice LLC, St. Louis, MO.

*Young Kang*, Trial Attorney, Natural Resources Section, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him was *Todd Kim*, Assistant Attorney General, and later *Lisa Lynne Russell*, Deputy Assistant Attorney General, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C.

## OPINION AND ORDER

Plaintiffs seek compensation for land rights taken pursuant to the National Trails System Act Amendments of 1983. *See* 16 U.S.C. § 1241, *et seq.* ("Trails Act"); 2d Am. Compl. (ECF 15). They have moved for certification of a class of similarly situated property owners. Mot. to Certify (ECF 4); Pls.' Mem. in Supp. of Mot. to Certify (ECF 5) ("Pls.' Mem."); *see also* Gov.'s Resp. (ECF 17); Pls.' Reply (ECF 22). I have heard oral argument. *See* Tr. (ECF 27).

Because Plaintiffs have failed to show that the standard laid out in RCFC 23 is met, the motion to certify a class is **DENIED**.

## BACKGROUND

The Trails Act establishes a process for turning railroad rights of way into recreational trails while reserving them for potential future rail use. 16 U.S.C. § 1247(d). The federal government action essential to the conversion is a Notice of Interim Trail Use or Abandonment ("NITU") issued by the Surface Transportation

Board. *McCann Holdings, Ltd. v. United States*, 111 Fed. Cl. 608, 613 (2013) (citing *Caldwell v. United States*, 391 F.3d 1226, 1233–34 (Fed. Cir. 2004)). Sometimes a NITU has the effect of preventing reversion of state-law property rights to the owners of property adjacent to the right-of-way. *Caldwell*, 391 F.3d at 1233 (citing *Preseault v. United States*, 100 F.3d 1525, 1552 (Fed. Cir. 1996), and *Toews v. United States*, 376 F.3d 1371, 1376 (Fed. Cir. 2004)). When that happens, the NITU extinguishes a state-law property right and effects a taking. *Memmer v. United States*, 50 F.4th 136, 140 (Fed. Cir. 2022) (citing *Caldwell*, 391 F.3d at 1233); *see also Hardy v. United States*, 965 F.3d 1338, 1349 (Fed. Cir. 2020) (citing *Caquelin v. United States*, 959 F.3d 1360 (Fed. Cir. 2020)).

Whether a NITU extinguishes a state-law property right depends on: (1) whether the railroad owned the land associated with the right-of-way or only an easement, (2) if the railroad operated over an easement on someone else's land, whether the easement was broad enough to include recreational trail use, and (3) if the easement did include trail use, whether the easement had terminated before the NITU issued. *Preseault*, 100 F.3d at 1533. A NITU thus effects a taking when it leads to trail use on private property, either outside the scope of the rail easement or after the rail easement expired.

This case concerns a 62.3-mile segment of rail line in Indiana, which became subject to a NITU on February 27, 2018. 2d Am. Compl. at 3–6. The named Plaintiffs allege that they own land adjacent to and underlying the railroad line, and they seek to certify a class for other such property owners. *Id.* at 9–11; Mot. to Certify at 1, 3; Pls.' Reply at 4. Specifically, Plaintiffs have proposed the following class definition:

> All persons who, as of February 28, 2018, owned a fee interest in property constituting any part of the Corridor for which the CSX Transportation, Inc. previously held an easement for railroad purposes and which is now occupied or controlled by the City of New Albany and/or Radius Indiana for trail use by virtue of the Notice of Interim Trail Use or Abandonment ("NITU") issued by the Surface Transportation Board on February 28, 2018 (as amended on October 12, 2022), and who claim a taking of their rights to possess, control, and enjoyment of their land pursuant to the STB's NITU, pursuant to Section 8(d) of the Trails Act, the Fifth Amendment of the Constitution, and the Tucker Act. Excluded from this Class are all persons who have elected to pursue claims in separate lawsuits against the United States

for compensation for the same interests in land, with the exception of *Andres et al. v. United States*, No. 4:24-cv-0038 (S.D. Ind. Feb. 23, 2024). Pls.' Reply at 4. [1]

## DISCUSSION

RCFC 23 governs class actions at the U.S. Court of Federal Claims. It reads, in relevant part:

(a) Prerequisites. One or more members of a class may sue as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. A class action may be maintained if RCFC 23(a) is satisfied and if: …

(2) the United States has acted or refused to act on grounds generally applicable to the class; and

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by class members; … and

(D) the likely difficulties in managing a class action.

RCFC 23(a)–(b). The test thus has seven elements: (1) numerosity, *see* RCFC 23(a)(1), (2) commonality, *see* RCFC 23(a)(2), (3) typicality, *see* RCFC 23(a)(3), (4) adequacy, *see* RCFC 23(a)(4), (5) general applicability, *see* RCFC 23(b)(2), (6) predominance, *see*

---

[1] This is Plaintiffs' second proposed class definition, superseding a different definition proposed in Plaintiffs' original motion. Tr. at 9–10; Pls.' Mem. at 3. The earlier proposed definition shares the flaws discussed below, and so would have failed the RCFC 23 class certification standard as well.

RCFC 23(b)(3), and (7) superiority, *see id.*; *see generally Jaynes v. United States*, No. 04-856C, 2005 WL 6112634, at *4–11 (Fed. Cl. Aug. 19, 2005).[2]

The RCFC 23 test is similar to the one created by the Federal Rules of Civil Procedure, though with some differences specific to this Court. *See* Fed. R. Civ. P. 23. Most relevant here, RCFC 23 provides only for opt-in class actions. *Oztimurlenk v. United States*, 162 Fed. Cl. 668, 669 (2022). Even when a class is certified, parties within the class definition are not included in the class unless they affirmatively choose to join. *Id.* at 669, 672; *Bright v. United States*, 603 F.3d 1273, 1277 n.1 (Fed. Cir. 2010). In federal civil classes, class members are included by default (and bound by any judgment) unless they affirmatively opt out. *Oztimurlenk*, 162 Fed. Cl. at 672 & n.13 (citing *Bright*, 603 F.3d at 1277 n.1).

Like its federal counterpart, though, RCFC 23 "does not set forth a mere pleading standard." *Oztimurlenk*, 162 Fed. Cl. at 681 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *see also Jones v. United States*, 118 Fed. Cl. 728, 733 (2014) ("In determining whether [RCFC 23 requirements] ... are met, the court must, where necessary, look beyond the pleadings, and seek to develop an understanding of the relevant claims, defenses, facts and substantive law.")[3] Plaintiffs seeking class certification bear the burden of affirmatively proving that the RCFC 23 requirements are all "in fact" met by a preponderance of the evidence. *Oztimurlenk*, 162 Fed. Cl. at 673 (quoting *Wal-Mart*, 564 U.S. at 350) (emphasis omitted). In determining whether plaintiffs have carried their burden, the Court must conduct a "rigorous analysis" and thus may be required to "probe behind the pleadings" to assess plaintiffs' showing. *Wal-Mart*, 564 U.S. at 350–51 (quoting *Gen.*

---

[2] Some of this Court's cases, starting with *Barnes v. United States*, apply a *five*-factor test comprising (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, and (5) superiority. *See* 68 Fed. Cl. 492, 494 (2005); *see also, e.g., Geneva Rock Prods., Inc. v. United States*, 100 Fed. Cl. 778, 782 (2011). The *Barnes* formulation is nominally based on RCFC 23, pre-RCFC authority from the Court of Claims, and other shorthand tests devised by Article III courts applying the Federal Rules of Civil Procedure. *See Barnes*, 68 Fed. Cl. at 494–95 & n.1. But as discussed in more detail below, it omits or obscures aspects of the Rule's text. Cases that adopted *Barnes's* five-factor test perpetuated the error, *see, e.g., Starr Int'l Co., Inc. v. United States*, 109 Fed. Cl. 628, 632 (2013), and over time a body of cases developed that cite RCFC 23, but which predominantly rely on each other. *See, e.g., Oztimurlenk v. United States*, 162 Fed. Cl. 668, 669 (2022) (citing *Horvath v. United States*, 149 Fed. Cl. 735, 743 (2020) (itself citing *Barnes*, 68 Fed. Cl. at 494)); *Carson v. United States*, No. 18-1902C, 2023 WL 8812926, at *3 (Fed. Cl. Dec. 20, 2023) (citing *Mercier v. United States*, 138 Fed. Cl. 265, 270 (2018) (itself citing, *inter alia*, *Barnes*, 68 Fed. Cl. at 494)). *Barnes* was correct in drawing on earlier cases and the Federal Rules to understand RCFC 23, but neither is a substitute for the text of the Rule itself.
[3] Some of this Court's cases could be read to permit class certification without an evidentiary record. *See Singleton v. United States*, 92 Fed. Cl. 78, 85 (2010) (certifying a class, pre-*Wal-Mart*, even though the plaintiffs "ha[d] not submitted any actual evidence to meet their evidentiary burden" on some elements). To the extent those cases permit class certification without evidence, they are inconsistent with *Wal-Mart* and should not be followed.

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160–61 (1982)); *Oztimurlenk*, 162 Fed. Cl. at 673. Failure to prove even one factor of the RCFC 23 test is fatal to a motion to certify a class. *Brown v. United States*, 126 Fed. Cl. 571, 577 (2016) (citing *Barnes v. United States*, 68 Fed. Cl. 492, 494 (2005)).

As I explain further below, Plaintiffs have failed to prove that the RCFC 23 test supports class certification in this case.[4]

## I.    RCFC 23(a)

### A. Numerosity

The numerosity prong of RCFC 23 assesses whether "the class is so numerous that joinder of all members is impracticable[.]" RCFC 23(a)(1); *compare* Fed. R. Civ. P. 23(a)(1) (same). Plaintiffs do not meet that standard.

#### 1.    Lack of evidence of the number of class members

First, as mentioned above, class certification requires an *evidentiary* showing that each element of RCFC 23 is met. *Gross v. United States*, 106 Fed. Cl. 369, 377 (2012); *Arnhold v. United States*, 166 Fed. Cl. 499, 505 (2023); *see also Geneva Rock Prod., Inc. v. United States*, 100 Fed. Cl. 778, 787 (2011) (citing exhibit to class certification motion as evidence of class size). Courts agree that litigants cannot show numerosity without some kind of proof of how many people — roughly — are in the proposed class. *Gross*, 106 Fed. Cl. at 377; *see Lohmann v. United States*, 154 Fed. Cl. 355, 369 (2021). Attorney speculation is not enough. *Fisher v. United States*, 69 Fed. Cl. 193, 198 (2006) (citing, *inter alia*, 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1762 (3d ed. 2005)). Here, although Plaintiffs' briefing includes representations about how many property owners the proposed class definition might include, Pls.' Mem. at 2, they provide absolutely no supporting evidence.

Plaintiffs have offered to supplement their argument with evidence. Tr. at 95. They have not moved for leave to do so. Even if they had, movants are ordinarily required to provide any necessary evidence in their motion papers. *See* RCFC 7(b)(1)

---

[4] The government also objects to the class definition, claiming Plaintiffs have proposed an improper "fail safe" class. Gov.'s Resp. at 4–7. The issue, in essence, is that the class is defined in such a way that everyone in the class would prevail on the merits. *See, e.g., Mullins v. Direct Digit., LLC*, 795 F.3d 654, 660 (7th Cir. 2015). Decisions applying the Federal Rules of Civil Procedure have diverged as to whether that makes a class definition improper. *Compare, e.g., McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 799 (7th Cir. 2017) (applying a rule against fail-safe classes); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015) (Dyk, J., sitting by designation) (same), *with Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993) (declining to forbid fail-safe classes), *abrogated on other grounds by Wal-Mart*, 564 U.S. 338; *In re White*, 64 F.4th 302, 313 (D.C. Cir. 2023) (same). The question has not been resolved under this Court's Rules. I need not reach the issue because I deny class certification for other reasons.

("Any motion, objection, or response may be accompanied by … , if necessary, affidavits supporting the motion."). When an argument is not fully developed in briefing, this Court — absent unusual circumstances — ordinarily finds a forfeiture rather than allowing the movant to scurry back to his attic for more:

> [A] motion (somewhat obviously) is not a pleading, like a complaint, in which the factual allegation[s] are presumed true. Nor does it constitute a mere invitation for the court to investigate further whether to grant relief. Rather, … it is incumbent upon the motion-filer to demonstrate that he or she is entitled to that relief — now.

*See Kennedy v. Sec'y of Health & Hum. Servs.*, 99 Fed. Cl. 535, 550 (2011), *aff'd*, 485 F. App'x 435 (Fed. Cir. 2012) (citations omitted). Compelling movants to present complete, self-contained motions conserves the Court's time. It also protects the responding party from unfair surprise and manipulation.

At most, Plaintiffs' counsel represented at argument that documentation substantiating the number of potential class members had been provided to the government. Tr. at 48, 95. The documentation has not been provided to the Court, though, and the government has not stipulated to the numbers Plaintiffs suggest. Tr. at 66–69, 75–77, 83–84. That leaves no basis for me to make any finding about the numbers of the proposed class.

### 2. *Lack of evidence of evidence that joinder is impracticable*

Second, Plaintiffs have not made any showing that joinder, as opposed to class certification, is "impracticable." RCFC 23(a)(1). This Court has struggled to make sense of the impracticability requirement. But one way or another, I do not find any impracticability here.

Part of the problem is that the numerosity requirement is out of place in the context of this Court's Rules. To be numerous enough for class certification, a group must be so large that joinder is "impracticable." RCFC 23(a)(1); *see also* 7A Wright, Miller & Kane, *supra*, § 1762 (4th ed. 2024) ("[W]hen there are other class members who have not been made parties but can be joined easily, then a class action will not be allowed."). But for an opt-in class, class membership is essentially indistinguishable from joinder "in that it requires affirmative action on the part of every potential plaintiff." *Haggart v. United States*, 89 Fed. Cl. 523, 530 (2009) (quoting *Buchan v. United States*, 27 Fed. Cl. 222, 223 (1992)); *see also Oztimurlenk*, 162 Fed. Cl. at 694; *Geneva Rock*, 100 Fed. Cl. at 787 (quoting *Haggart*, 89 Fed. Cl. at 530); *Carson v. United States*, No. 18-1902C, 2023 WL 8812926, at *2 (Fed. Cl. Dec. 20, 2023) (quoting *Haggart*, 89 Fed. Cl. at 530). If an opt-in class is simply another form of joinder, how can it be practicable when joinder is not? This Court's cases have

no good explanation. *See Oztimurlenk*, 162 Fed. Cl. at 674 ("Impracticability of joinder itself is arguably a nonsensical question in an opt-in class action, which may be viewed as nothing more than a permissive joinder procedure.").

With no meaningful basis for comparing class certification to joinder, this Court has reached inconsistent decisions about how many plaintiffs it takes to satisfy the numerosity requirement. According to some decisions, a proposed class of 800 plaintiffs satisfies the numerosity requirement, *see Toscano v. United States*, 98 Fed. Cl. 152, 155 (2011), but a class of 1,218 does not, *see Abel v. United States*, 18 Cl. Ct. 477, 478 (1989). A class of 152 does, *see King v. United States*, 84 Fed. Cl. 120, 124 (2008), but a class of 258 does not, *see Jaynes v. United States*, 69 Fed. Cl. 450, 454 (2006). A class of 23 does, *see Geneva* Rock, 100 Fed. Cl. at 787, but a class of 50 does not, *see Rasmuson v. United States*, 91 Fed. Cl. 204, 211 (2010). Those numbers suggest not merely the absence of "arbitrary rules regarding the size of classes," *see Fauvergue v. United States*, 86 Fed. Cl. 82, 96 (2009) (quoting *Jaynes*, 69 Fed. Cl. at 454), *rev'd on other grounds sub nom. Bright*, 603 F.3d 1273, but a deeper confusion about what the numerosity requirement demands.

This Court has often said that numbers are not the only thing relevant to evaluating numerosity: Whether a particular number of plaintiffs is too numerous to join depends instead on the facts of a particular case. *See, e.g.*, *Jaynes*, 69 Fed. Cl. at 454 (citing 7A Wright, Miller & Kane, *supra*, § 1762 (3d ed. 2005)). In theory that could justify the Court's different treatments of similar numbers. Yet the factors that this Court has sometimes taken into account make the problem even worse.

Some decisions say that joinder is more likely to be impracticable when members of a class are geographically dispersed or hard to locate. *See, e.g.*, *King*, 84 Fed. Cl. at 124–25; *Geneva Rock*, 100 Fed. Cl. at 787; *Brown*, 126 Fed. Cl. at 578–79; *see also Jaynes*, 69 Fed. Cl. at 454 (considering "the ease of identifying its members and ascertaining their addresses, the facility of making service on them if joined, and their geographic dispersion"). Developments in modern communication methods have of course made it easier to coordinate individuals over large distances.[5] Considering geography might still lead to efficiencies under the Federal Rules, where a district court can simply designate absent individuals as members of an opt-out class, issue constructive notice if they cannot be personally located, and adjudicate their claims. *See Hansberry v. Lee*, 311 U.S. 32, 41 (1940); *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972); *see generally* 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* §§ 1:5, 1:6, 1:9, 3:12 (6th ed. 2024); 3 Rubenstein, *supra*, §§ 8:29,

---

[5] This case — where lawyers in Missouri are representing several named owners of property in Indiana — provides a good example.

8:30; 6 Rubenstein, *supra*, § 18:14; *cf. Ansari v. New York Univ.*, 179 F.R.D. 112, 115 (S.D.N.Y. 1998) (finding joinder of a geographically dispersed group not impracticable where lead plaintiff could locate each individual); *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666, 668 (E.D. Ky. 1974) (similar). But in this Court's opt-in classes, if difficulty locating individuals makes them too hard to join,[6] it probably also makes them unlikely to opt in.

Similarly, centralizing a geographically dispersed class in a single district court has the potential to simplify questions of jurisdiction and case management. *Hansberry*, 311 U.S. at 41; *see In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) (finding that the geographic dispersion of proposed class members weighed in favor of class certification); *Allen v. Isaac*, 99 F.R.D. 45, 53 (N.D. Ill.), *amended*, 100 F.R.D. 373 (N.D. Ill. 1983) (same); *cf. Baltimore v. Laborers' Int'l Union of N. Am.*, 67 F.3d 293, *1 (4th Cir. 1995) (upholding the district court's finding that numerosity was not met when, among other factors, the potential members likely lived in an "established jurisdictional boundary"). This Court, though, has exclusive jurisdiction over most of the claims it hears, *Oztimurlenk*, 162 Fed. Cl. at 672 n.12, so litigants enjoy a single venue under a single circuit's appellate review, *id.* at 675 & n.23; *see generally* 28 U.S.C. § 1295; 28 U.S.C. § 1491, *et seq.* Even Plaintiffs' counsel was at a loss to explain why this Court has incorporated geographic dispersal into the numerosity analysis. Tr. at 28–30. Whatever geography's relevance might be under the Federal Rules, it makes little logical difference here.

Decisions sometimes address numerosity by considering the size of class members' claims. *See, e.g., Brown*, 126 Fed. Cl. at 579–80; *Geneva Rock*, 100 Fed. Cl. at 787; *Haggart*, 89 Fed. Cl. at 532; *King*, 84 Fed. Cl. at 125; *see also Arnhold*, 166 Fed. Cl. at 506. "Because the time and financial commitment involved in litigation can be outweighed by the potential recovery, forming a class action can be the only method of rendering what would otherwise be a nominal recovery more substantial and worthwhile." *Fauvergue*, 86 Fed. Cl. at 97; *but see Brown*, 126 Fed. Cl. at 580 (questioning whether a "claimant with a small claim would, as a general proposition, choose to opt into a class action but not join a suit as a plaintiff"). Along similar lines, decisions occasionally find that numerosity advances "judicial economy because the

---

[6] Plaintiffs' counsel admit that they *have* identified names and addresses for all the potential class members. Tr. at 30. That would seem to make joinder easier, and so weigh against certification. But some decisions of this Court draw a different inference. One suggests that "plaintiffs' possession of such information [about potential class members] does not preclude the certification of a class action, but merely means that assembling a class and communicating with its members will be relatively easy." *Brown*, 126 Fed. Cl. at 579. Another goes even further, saying that even when there is evidence that joinder is *not* impracticable, class certification can be granted based on numbers alone. *Arnhold*, 166 Fed. Cl. at 507.

alternative is multiple suits against the government." *Sears v. United States*, 124 Fed. Cl. 444, 450 (2015) (citing *Haggart v. United States*, 104 Fed. Cl. 484, 489 (2012)) (addressing division of class into subclasses). One could compile "a long and hazy list" of such supposedly relevant considerations. *Oztimurlenk*, 162 Fed. Cl. at 674 (collecting cases). But those reasons are an obviously poor fit with the text of RCFC 23(a). They might go to whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* RCFC 23(b)(3); *Bell v. United States*, 123 Fed. Cl. 390, 396–97 (2015). What do they have to do, though, with whether the potential plaintiffs are too *numerous* to use joinder mechanisms?

Several cases have sought firmer ground by comparing RCFC 23 with the RCFC 20 standard for permissive joinder. Permissive joinder, those cases observe, is only available to parties asserting claims "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[.]" RCFC 20(a)(1)(A); *see Barnes*, 68 Fed. Cl. at 495; *Douglas R. Bigelow Tr. v. United States*, 97 Fed. Cl. 674, 676 (2011); *Jones*, 118 Fed. Cl. at 733. When parties' claims do not meet that test — the reasoning goes — joinder is impracticable for RCFC 23(a)(1) purposes because it is forbidden by RCFC 20. *See Barnes*, 68 Fed. Cl. at 495 (citing *Franconia Assocs. v. United States*, 61 Fed. Cl. 335, 336 (2004)).

Although superficially appealing, that reasoning does not fit well with the text of RCFC 23 either. Most obviously, while there may be many reasons to consider joinder "impracticable" for a particular group of potential plaintiffs, only one of them matters for RCFC 23(a): whether the individuals are too "numerous." Whether potential plaintiffs' claims are factually related is a different concern, which the Rule addresses in other ways.

As it happens, one of those ways directly contradicts the decisions that relate numerosity to RCFC 20(a)(1)(A). Those decisions overlook the fact that RCFC 23 includes a very similar requirement: Classes are only "maintainable" under RCFC 23(b) if "the United States has acted or refused to act on grounds generally applicable to the class[.]" RCFC 23(b)(2). When joinder is impracticable because class members' claims do not concern "the same transaction, occurrence, or series of transactions or occurrences," RCFC 20(a)(1)(A), it is highly unlikely that the United States "has acted or refused to act on grounds generally applicable to the class," RCFC 23(b)(2), so class certification would not be allowed either. If there is any daylight between those phrases, the cases relying on impermissibility of joinder do not explain what it is. Instead, this Court's decisions comparing the RCFC permissive joinder standard to the class certification standard have made what appear to be serious interpretive

errors.[7] It is hard to imagine a circumstance where permissive joinder under RCFC 20 is precluded but a class certification under RCFC 23 is allowed.

Notwithstanding the legal confusion, satisfying the numerosity standard surely calls for some kind of evidentiary showing that the class members' numbers make class certification desirable. *See, e.g.*, *Gross*, 106 Fed. Cl. at 377; *Lohmann*, 154 Fed. Cl. at 368–69. But as mentioned, Plaintiffs have not submitted evidence of any kind. Moreover, as Plaintiffs acknowledge, other litigation involving the same rail line and the same NITU has proceeded by joinder. Pls.' Mem. at 16. Those cases have included, in the aggregate, almost 700 plaintiffs, with the largest suit alone joining over 400 plaintiffs. *See* Gov.'s Resp. at 18 (citing *Zinser v. United States*, No. 1:18-cv-306 (Fed. Cl. filed Feb. 28, 2018); *Cessna v. United States*, No. 1:18-cv-4372 (Fed. Cl. filed Dec. 20, 2019); *Robert W. & Margaret E. Alexander Revocable Tr. v. United States*, No. 1:18-cv-4371 (Fed. Cl. filed Dec. 20, 2019); *Popp v. United States*, No. 1:19-cv-358 (Fed. Cl. filed Mar. 8, 2019); *Lawrence Cnty. Farm Supply, LLC v. United States*, No. 1:22-cv-92 (Fed. Cl. filed Jan. 31, 2022); *Kay v. United States*, No. 1:22-cv-1657 (Fed. Cl. filed Nov. 7, 2022); *Asher v. United States*, No. 1:20-cv-185 (Fed. Cl. filed Feb. 21, 2020), and *Farrell v. United States*, No. 1:24-cv-301 (Fed. Cl. filed Feb. 26, 2024)).

Plaintiffs point out that there are some property owners subject to the same NITU who have not joined other suits. Tr. at 16–17. Some of those property owners, Plaintiffs predict, might have declined to sue before, but might opt into a class if they receive court-ordered notice. Tr. at 17, 19, 23–27. But joinder is not impracticable simply because certain potential class members have slept on their rights, even if they have misunderstood what their rights are. *Jaynes*, 2005 WL 6112634, at \*5. With no reason to find that joinder is impracticable here, the numerosity standard is unmet.

---

[7] Some quote the RCFC 23(b)(2) "grounds generally applicable" requirement, but simply neglect to address it anywhere. *Jones*, 118 Fed. Cl. at 732; *Douglas R. Bigelow Tr.*, 97 Fed. Cl. at 676. Others seem to overlook that RCFC 20(a) permits joinder not only for parties subject to the "same transaction [or] occurrence," but the "same … series of transactions or occurrences." *Compare* RCFC 20(a)(1)(A) (emphasis added), *with Jones*, 118 Fed. Cl. at 733; *Barnes*, 68 Fed. Cl. at 495; *Filosa v. United States*, 70 Fed. Cl. 609, 615 (2006); *Land Grantors in Henderson, Union & Webster Cntys., Ky. v. United States*, 71 Fed. Cl. 614, 622 (2006); *compare In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012) ("[Federal Rule of Civil Procedure] 20 clearly contemplates joinder of claims arising from a 'series of transactions or occurrences' — a single transaction is not required."). That oversight results in decisions concluding, strangely, that joinder is impermissible but that a class may be certified. To take one example, this Court in *Filosa* — where nurses alleged a single agency policy that deprived them of additional pay for after-hours work — held that the absent class members failed the RCFC 20(a) transaction test, but satisfied RCFC 23(b)(2) with a government action "generally applicable" to the whole class. 70 Fed. Cl. at 613–14, 615–16, 620; *see also Land Grantors*, 71 Fed. Cl. at 622–23, 625 (addressing a series of land condemnations); *Barnes*, 68 Fed. Cl. at 493, 495–97 (addressing military premium pay).

**B. Commonality**

The next question is whether "there are questions of law or fact common to the class." RCFC 23(a)(2). The commonality requirement "limit[s] the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 564 U.S. at 349 (quoting *Falcon*, 457 U.S. at 156 (in turn quoting *Gen. Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 330 (1980))) (quotes omitted). It "requires the plaintiff[s] to demonstrate that the class members 'have suffered the same injury[.]'" *Id.* at 349–50 (quoting *Falcon*, 457 U.S. at 157). The unifying injury must, in turn, "depend upon a common contention … of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Put another way, common questions are ones that "generate common *answers* apt to drive the resolution of the litigation." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Several of this Court's decisions have treated the commonality inquiry as involving three elements: (1) whether there are "questions of law or fact common to the class," (2) whether those questions "predominate over any questions affecting only individual members," and (3) whether the United States has "acted or refused to act on grounds generally applicable to the class."[8] With all respect to my learned colleagues, that approach mistakenly conflates the RCFC 23(a)(2) commonality requirement with two separate requirements under RCFC 23(b) for when a class "may be maintained." *See* RCFC 23(b)(2) (requiring that "the United States has acted or refused to act on grounds generally applicable to the class"); RCFC 23(b)(3) (requiring, *inter alia*, that the Court must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members"); *see also, e.g.*, *Geneva Rock*, 100 Fed. Cl. at 788 ("The commonality criterion is generally evaluated based upon a three-part test cobbled together from various parts of RCFC 23.").

Treating RCFC 23(b)(2) as part of the commonality requirement is at least potentially harmless. When we move a legal standard from when it belongs, we risk

---

[8] *See Land Grantors*, 71 Fed. Cl. at 623; *King*, 84 Fed. Cl. at 125; *Fauvergue*, 86 Fed. Cl. at 98–99; *Haggart*, 89 Fed. Cl. at 532; *Gregory v. United States*, No. 09-114L, 2009 WL 8750126, at *2 (Fed. Cl. Oct. 5, 2009); *Singleton*, 92 Fed. Cl. at 84; *Geneva Rock*, 100 Fed. Cl. at 788; *Starr Int'l*, 109 Fed. Cl. at 633; *DeMons v. United States*, 119 Fed. Cl. 345, 354 (2014); *Garcia v. United States*, No. 13-1024C, 2015 WL 1598107, at *8 (Fed. Cl. Apr. 9, 2015); *Gross v. United States*, 128 Fed. Cl. 745, 766 (2016); *Kane Cnty., Utah v. United States*, 137 Fed. Cl. 653, 656 (2018); *Mercier*, 138 Fed. Cl. at 271; *Crawley v. United States*, No. 18-1804C, 2021 WL 252838, at *8 (Fed. Cl. Jan. 25, 2021); *Lohmann*, 154 Fed. Cl. at 369; *Carson*, 2023 WL 8812926 at *3 (citing *Elec. Welfare Tr. Fund v. United States*, 160 Fed. Cl. 462, 468 (2022) (itself citing *Filosa*, 70 Fed. Cl. at 617)).

forgetting where we put it. As mentioned, this Court has sometimes forgotten that RCFC 23(b)(2) is even there, leading to confusion between class and joinder standards. But as long as we remember RCFC 23(b)(2) *someplace*, the end result is similar: One way or another, if there is no government conduct generally applicable to a group, the group cannot be certified as a class.

Mushing RCFC 23(b)(3) together with RCFC 23(a)(2) is a worse mistake, for it changes not just the sequence of the analysis, but the substance. For one thing, it departs from the Supreme Court's decision in *Wal-Mart*, which emphasized (in response to the dissent's criticisms) that the predominance inquiry under Federal Rule of Civil Procedure 23(b)(3) does *not* belong in the commonality inquiry. *Wal-Mart*, 564 U.S. at 359. The Rule is likewise plain that a finding of commonality is a *prerequisite* to analyzing predominance. *See* RCFC 23(b)(3) (class maintainable if "the questions of law or fact common to class members predominate"). That forecloses treating predominance as an *element* of commonality.

This Court's commonality-plus-predominance chimera is also logically questionable. The Rule provides a structure for how to analyze predominance:

> The matters pertinent to [the predominance and superiority analyses] include:
>
> > (A) the class members' interests in individually controlling the prosecution of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by class members; …
>
> and
>
> > (D) the likely difficulties in managing a class action.

RCFC 23(b)(3)(A)–(D). If predominance is simply part of commonality, this Court has an awkward choice. It could analyze predominance as the Rule requires, effectively making RCFC 23(b)(3)(A) through (D) sub-elements of the commonality standard. That would — quite incongruously — treat potential claimants' litigation interests and the Court's case management challenges as going to the existence of "questions of law or fact common to the class." RCFC 23(a)(2). The Court's other option is to tear the predominance inquiry away from its textual roots and analyze it as a free-floating concept without the definitional substance that the Rule provides. *Contra Van Buren v. United States*, 593 U.S. 374, 387 (2021) ("When a statute includes an explicit definition of a term, we must follow that definition, even if it varies from a term's ordinary meaning.") (internal quotes omitted) (quoting *Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020)).

This is all a good reminder that judicial interpretation should generally follow the structure of an enacted text, not the other way around. *See Badgerow v. Walters*, 596 U.S. 1, 12 n.5 (2022) ("[T]he (nigh-inevitable) connection among a statute's diverse provisions does not give a court carte blanche to move rules or concepts from any one section to any or all others."). I will analyze commonality on its own, as the Rule unambiguously requires.

Plaintiffs argue that the common question in this case is "whether the NITU issued on February 28, 2018 effected a taking of the class members' property." Pls.' Reply at 9; *see* Pls.' Mem. at 9–10. Some of this Court's decisions could be read to treat the legal effect of a NITU on class members' property rights as a common question. *See, e.g.*, *Douglas R. Bigelow Tr.*, 97 Fed. Cl. at 678. In this case, though, that question leads mainly to more questions, not "answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (quoting Nagareda, *supra*, at 132) (emphasis omitted).

As the Federal Circuit has explained, whether a particular NITU effects a taking of a particular property turns on a series of property-specific inquiries. Had the railroad acquired title to the land it ran over, or did it acquire only an easement? If an easement, were the terms of the easement broad enough to include future use as a trail? Or had the easements terminated before the NITU went into effect? *See Preseault*, 100 F.3d at 1533; *cf. Toews*, 376 F.3d at 1376 ("The defining issue in this case is the question of the scope of the easements originally granted to the railroad."). Because of those property-specific questions, Trails Act compensation cases are often poorly suited to class treatment. *See, e.g.*, *Brown*, 126 Fed. Cl. at 583; *Turner v. United States*, 115 Fed. Cl. 614, 618 (2014); *see also Atkins v. United States*, No. 4:15-cv-933, 2016 WL 3878466, at *5 (E.D. Mo. July 18, 2016).

In arguing that this is the unusual Trails Act compensation case suited to class-wide resolution, Plaintiffs point to the facts of *Geneva Rock v. United States*. Pls.' Reply at 10. In *Geneva Rock*, plaintiffs claimed (albeit without specific evidence) that the original rail easements had been conveyed by a single federal grant. *See Geneva Rock*, 100 Fed. Cl. at 789; *Geneva Rock*, No. 08-920, Mem. in Supp. of Mot. to Cert. Class Action at 1, 11 (ECF 20). The Court held that the existence and effect of the grant went to the questions of liability and compensation, not class certification. *Geneva Rock*, 100 Fed. Cl. at 789. The Court's approach in *Geneva Rock* is certainly subject to criticism, but there was at least an argument that because of the single federal grant, the NITU would have had the same legal effect on each class member's property rights.

Here, Plaintiffs claimed at oral argument that the "vast majority" of the railroad right-of-way in this case was conveyed by a single federal charter. Tr. at 4–5, 10–11, 43–44, 99. Plaintiffs also argued that under Indiana law, railroad easements never extend to trail use. Tr. at 35–44. But Plaintiffs cannot quite complete the analogy to *Geneva Rock*.

To begin with, Plaintiffs did not mention the supposed charter — let alone prove its existence or contents — in their briefing. *See* Tr. at 5, 37–39. That makes it difficult to find commonality as a factual matter. *Brown*, 126 Fed. Cl. at 583 n.10.

Nor did Plaintiffs give an account of Indiana easement law. Plaintiffs' opening brief cited cases from this Court addressing Indiana law, Pls.' Mem. at 3 (citing *Macy Elevator, Inc. v. United States*, 105 Fed. Cl. 195 (2012), *Memmer v. United States*, 150 Fed. Cl. 706, 730–32 (2020), *aff'd in part and vacated in part*, 50 F.4th 136 (Fed Cir. 2022), and *Howard v. United States*, 106 Fed. Cl. 343 (2012)), but did not argue in plain terms (much less establish) that Indiana railroad easements never cover trails. The government's response brief argued that Plaintiffs had not shown commonality among the property rights at issue, Gov.'s Resp. at 10–13, and Plaintiffs did not revisit Indiana law in their reply. Although Plaintiffs tried to develop their theories of Indiana law at the hearing, *see* Tr. at 35–44 (citing *Howard v. United States*, 964 N.E.2d 779, 781 (Ind. 2012)), issues raised for the first time at oral argument are usually forfeited. *Gaynor v. United States*, 150 Fed. Cl. 519, 536 n.14 (2020); *Res. Recycling Corp. v. United States*, 56 Fed. Cl. 612, 618 (2003); *Arakaki v. United States*, 62 Fed. Cl. 244, 246 n.9 (2004).

Besides, even assuming that the "vast majority" of the relevant property easements were in fact conveyed by a single charter, Plaintiffs still do not claim that *all* the easements were. *See* Tr. at 10, 99. Some, they concede, were not. *Id.* That means that answers to questions about property easements would not be common to all class members. *See Wal-Mart*, 564 U.S. at 350 ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."). Even if Indiana easement law is what Plaintiffs say it is, and even if most easements at issue resulted from a single charter — two issues Plaintiffs have forfeited — the Court would *still* need to resolve questions of fee ownership and easement termination for each property. *See Preseault*, 100 F.3d at 1533. Plaintiff-by-plaintiff, property-by-property evaluations of liability are inevitable. The real question is how *much* property-specific analysis is necessary — a question I cannot resolve because of Plaintiffs' failure to brief the facts or the Indiana law they raised at argument.

Plaintiffs' omissions leave me without any assurance of what Plaintiffs have in common with absent class members. *See Wal-Mart*, 564 U.S. at 349–50. And because I cannot find common questions under RCFC 23(a)(2) without knowing how much the class members have in common, *see, e.g., Brown*, 126 Fed. Cl. at 584, Plaintiffs' forfeiture defeats commonality.

## C. Typicality

Typicality requires that Plaintiffs show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" RCFC 23(a)(3).[9] The typicality requirement is satisfied where the "claims ... of the representatives and the members of the class stem from a single event or unitary course of conduct, or if they are based on the same legal or remedial theory." *Geneva Rock*, 100 Fed. Cl. at 790 (quoting *King*, 84 Fed. Cl. at 126 (in turn quoting 7A Wright, Miller & Kane, *supra*, § 1764, at 270–71 (3d ed. 2005))).[10] Factual differences between named and absent class members do not defeat typicality "provided that the named representatives' claims share the same essential characteristics as the claims of the class at large." *Fisher*, 69 Fed. Cl. at 200. The threshold for typicality, in short, "is ... not high." *Brown*, 126 Fed. Cl. at 585 (quoting *Fisher*, 69 Fed. Cl. at 200). But like the other requirements for class certification, it demands evidentiary proof. *Wal-Mart*, 564 U.S. at 350; *see, e.g., Brown*, 126 Fed. Cl. at 585–86.

Here, typicality depends on whether the named Plaintiffs' property rights — especially, the nature of the railroad easements on their land — are typical of all class members. *See Brown*, 126 Fed. Cl. at 585–86. But as mentioned above, Plaintiffs have not provided any evidence or legal argument about what the state-law property rights

---

[9] "[T]he commonality and typicality requirements of Rule 23(a) tend to merge," because both bear on "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (quoting *Falcon*, 457 U.S. at 157–58, n. 13).

[10] One decision of this Court suggests that the typicality requirement (as well as adequacy, discussed below) has limited relevance in opt-in classes because absent individuals who do not opt in are not bound by the judgment. *Oztimurlenk*, 162 Fed. Cl. at 680. That is true as far as it goes, but typicality and adequacy also bear on fairness to individuals who *do* opt in and *are* bound by the judgment. *See* RCFC 23(c)(2)(B)(vii), 23(e)(2); *see Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 100–01 (2017) (considering fairness in the context of typicality and adequacy, and commenting that "in an opt-in class action ... parties who affirmatively choose to join the class are bound by the outcome"); *Singleton*, 92 Fed. Cl. at 81, 84–85 (similar). Courts applying the Federal Rules consider typicality and adequacy in order to protect all individuals who might be bound. *See, e.g., Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972, 990 (N.D. Cal. 2018); *Coleman v. Alaska USA Fed. Credit Union*, No. 3:19-cv-229, 2021 WL 11959600, at *4 (D. Alaska Nov. 17, 2021); *see also Cochoit v. Schiff Nutrition Int'l, Inc.*, 326 F.R.D. 631, 635 (C.D. Cal. 2018) (considering adequacy). Regardless of how a court forms a class of bound individuals — by opt-out or opt-in procedures — the representatives should be suitable stand-ins for everyone else.

are. Plaintiffs' counsel in fact conceded that there are differences as to the easements within the proposed class. Tr. at 10, 99. Nor have Plaintiffs demonstrated that their property interests reflect the different types of property interests of all class members. That means there may well be potential class members with claims different from those of the named Plaintiffs' and vice versa. *See Brown*, 126 Fed. Cl. at 585–86.

I cannot tell *how* different the claims are without more evidence than Plaintiffs have provided. I therefore cannot find typicality on the present record.

### D. Adequacy

Adequacy requires that Plaintiffs show that "the representative parties will fairly and adequately protect the interests of the class." RCFC 23(a)(4). That test has two aspects: (1) whether there are conflicts of interest between the named Plaintiffs and other class members, and (2) whether the proposed class counsel has the requisite competence to represent the class. *Common Ground Healthcare Coop. v. United States*, 137 Fed. Cl. 630, 641 (2018) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 & n.20 (1997)).

No one in this case is contesting the adequacy of counsel, Gov.'s Resp. at 21–22, so I assume that they have knowledge, experience, and resources sufficient to serve the class. *See* RCFC 23(g)(1)(A). The adequacy of the named Plaintiffs, though, is a harder question because of the absence of a factual record. Although this Court has considered Trails Act class representatives adequate when they assert the same takings claim arising from the same NITU, *Geneva Rock*, 100 Fed. Cl. at 790 (quoting *Haggart*, 89 Fed. Cl. at 535), failure to show commonality and typicality also sinks adequacy. *See Brown*, 126 Fed. Cl. at 586–87. Because Plaintiffs have not made a factual showing of commonality or typicality, I cannot find that their interests align with the rest of the class.

### II.    <u>RCFC 23(b)</u>

RCFC 23(b) instructs that a class action "may be maintained" if RCFC 23(a) is satisfied and:

> (2) the United States has acted or refused to act on grounds generally applicable to the class; and

> (3) the court finds that the question of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

RCFC 23(b)(2)–(3).

The first of those prongs is easy. When there is only one NITU applicable to everyone who might be in the class, the demands of RCFC 23(b)(2) are plainly met, even if the *effect* of the NITU might vary from property to property. *See Geneva Rock*, 100 Fed. Cl. at 788–89; *see also Caldwell*, 391 F.3d at 1233–34 ("The issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way.") (emphasis omitted).

The second — with its twin requirements of predominance and superiority — is more complicated. *See* RCFC 23(b)(3). Although predominance has occasionally been confused with RCFC 23(a)(1)'s commonality requirement, *see, e.g.*, *Geneva Rock*, 100 Fed. Cl. at 788; *see also Wal-Mart*, 564 U.S. at 359, predominance is "far more demanding." *Oztimurlenk*, 162 Fed. Cl. at 692. To show that common issues predominate, plaintiffs must show "whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from class member to class member." *Id.* at 692 (quoting *Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1156–57 (8th Cir. 2017)). If the common question requires a "detailed, highly individualized inquiry" in order to answer it for each plaintiff, then the predominance requirement is unmet and class certification is not appropriate. *Id.* (quotes omitted).

Plaintiffs argue that the common question in this case is whether the NITU effected a taking of each Plaintiff's property. Pls.' Mem. at 10. Even assuming that question is common to the class, I cannot find that it predominates over other questions without evidence. Whether a NITU takes property depends on the nature of the railroad's right-of-way over each piece of property it crosses. *See Preseault*, 100 F.3d at 1533. Plaintiffs have brought no evidence to illuminate that question. To the extent Plaintiffs argue that Indiana law makes it unnecessary to examine the specific easements, Tr. at 35, Plaintiffs forfeited the issue by failing to raise it in their briefs.[11] That leaves me with no basis to find that common questions about the easements will predominate over property-specific ones.

---

[11] Plaintiffs might have found support in Indiana law if they had addressed it before argument. *See Memmer*, 150 Fed. Cl. at 722 ("The Indiana Supreme Court has held that recreational trails are not within the scope of easements created for railroad purposes.") (citing *Howard*, 964 N.E.2d at 784), *aff'd in part, vacated in part, remanded*, 50 F.4th 136 (Fed. Cir. 2022). But the Indiana authority Plaintiffs belatedly relied on could also be read to hold simply that under Indiana law, easements are defined by their purpose and cannot be converted from one purpose to another. *See Howard*, 964 N.E.2d at 781. Thus, although the Indiana Supreme Court applied that holding to railroad and trail easements generally, *id.* at 784, it did not necessarily exclude the possibility that an express railroad easement *could* be written in terms broad enough to include recreation — in which case Plaintiff's Indiana authority would be distinguishable. I am reluctant to resolve that issue without briefing. Because Plaintiffs failed to prove the existence or terms of the relevant easements, I cannot ascertain their significance under Indiana law.

The other prong of RCFC 23(b) is superiority, which requires that I determine whether a class action is superior to other methods for resolving the claims. *Jaynes*, 69 Fed. Cl. at 459 (citing 7AA Wright, Miller & Kane, *supra*, § 1779 (3d ed. 2005)); *Oztimurlenk*, 162 Fed. Cl. at 694. As with numerosity, the superiority requirement is an odd fit with opt-in class actions, where class litigation is so similar to joinder that it is strange to ask whether one approach is better than the other. *See Oztimurlenk*, 162 Fed. Cl. at 694–96. But be that as it may, the superiority "requirement is met if the prospective class representative establishes that 'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Brown*, 126 Fed. Cl. at 587 (quoting Fed. R. Civ. P. Advisory Committee Note to 1966 Amendments, 39 F.R.D. 69, 102–03 (1966), *quoted in Amchem Prods.*, 521 U.S. at 615).

Plaintiffs argue, for example, that a class is superior because certification would bring more potential claimants into Court before the statute of limitations expires. Pls.' Mem. at 16–17. But although the Federal Circuit has treated class action allegations as tolling the limitations period for individuals within the proposed class, *Bright*, 603 F.3d at 1290 (explaining when class action tolling applies), the statute of limitations itself is a waiver of sovereign immunity by Congress and must be strictly construed. *MacLean v. United States*, 454 F.3d 1334, 1336 (Fed. Cir. 2006) (citing *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed. Cir. 1988)). This Court has little authority to decide that extending the time to sue in order to increase litigation is *superior* to Congress's decision that old claims should be put to rest. *Cf. Jaynes*, 2005 WL 6112634 at *5.

Similarly, Plaintiffs claim that certification would lead to Court-ordered notice to class members who might have ignored lawyer correspondence, leading more of them to join litigation. Tr. at 58–59. They also suspect that many class members might believe their claims are too small to justify litigation. Tr. at 17, 26; Pls.' Mem. at 8 (addressing numerosity); Pls.' Reply at 17–19. Rule 23, though, "should not be used as a device to enable client solicitation." *Oztimurlenk*, 162 Fed. Cl. at 695 (quoting *Escott v. BarChris Const. Corp.*, 283 F. Supp. 643, 706 (S.D.N.Y. 1968), and *Flanigan v. Am. Fin. Sys. of Ga., Inc.*, 72 F.R.D. 563, 563 (M.D. Ga. 1976)).

Some cases have suggested that classes may be superior when they allow individuals to litigate claims that would otherwise be uneconomical. *Bell*, 123 Fed. Cl. at 406; *see also Oztimurlenk*, 162 Fed. Cl. at 696 (deeming the issue waived). But in Tucker Act takings cases, including in Trails Act cases, attorneys' fees for successful plaintiffs are authorized by statute. *See* 42 U.S.C. § 4654(c). That often leads to fee awards that dramatically exceed recoveries. *See, e.g., Hippely v. United*

*States*, 173 Fed. Cl. 389, 399 (2024). While successful plaintiffs might still pay a portion of their recovery on fees and costs, *Bell*, 123 Fed. Cl. at 406,[12] the fact that they do not need to pay out of pocket largely obviates economic arguments for the class mechanism in Trails Act cases. *But see id.* Class members may not be *aware* of their right to attorneys' fees. Tr. at 24–25. But again, the class certification mechanism is not about soliciting litigation. *Oztimurlenk*, 162 Fed. Cl. at 695.

Finally, RCFC 23(b)(3) provides that the matters pertinent to predominance and superiority include:

> (A) the class members' interest in individually controlling the prosecution of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by class members; …
>
> and
>
> (D) the likely difficulties in managing a class action.

RCFC 23(b)(3)(A)–(B), (D).

The first two considerations are closely related, because pending litigation implies that individuals prefer to litigate their own claims. *Cf. Bell*, 123 Fed. Cl. at 407 (reasoning that a lack of pending litigation indicates that individuals have little interest in controlling their own litigation); *see also* 2 Rubenstein, *supra*, § 4:70 (6th ed. 2024); Fed. R. Civ. P. 23 Advisory Committee Note to 1966 Amendments, 39 F.R.D. 69, 104 (1966). Here, Little Tucker Act litigation involving the same NITU is already pending in the Southern District of Indiana. *See Andres v. United States*, No. 4:24-cv-38 (S.D. Ind. Feb. 23, 2024). The pendency of other litigation suggests that the predominance and superiority requirements are not met. *See* RCFC 23(b)(3)(A), (B).

The third factor, RCFC 23(b)(3)(D), "encompasses the whole range of practical problems that might render the class action format inappropriate for a particular suit." *Bell*, 123 Fed. Cl. at 407 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974)) (alteration omitted). But the primary "difficulties" Plaintiffs identify relate to who will or will not join this suit. Pls.' Mem. at 15–17. As just mentioned, those arguments appear directed at sidestepping the statute of limitations and encouraging litigation, which are not valid considerations.

---

[12] This Court in *Bell* also emphasized that unsuccessful Trails Act plaintiffs do not recover fees, 123 Fed. Cl. at 406 (citing 42 U.S.C. § 4654), but it is hard to see why that matters. Unless the owner of a small claim negotiates to pay his attorneys' time out of pocket — which is economically unlikely — he is no worse off if he loses. That makes the inapplicability of a fee-shifting statute in case of loss irrelevant to such a person's decision whether to litigate.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion to Certify (ECF 4) is **DENIED**.


**IT IS SO ORDERED**.

<u>s/ Stephen S. Schwartz</u>
STEPHEN S. SCHWARTZ
Judge